NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0428n.06

No. 07-4339

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| XIA ZHU, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE BOARD |
| | ) OF IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., United States | ) |
| Attorney General,[*] | ) |
| | ) |
| Respondent. | ) |

Before: GIBBONS and WHITE, Circuit Judges; TARNOW, District Judge.[**]

ARTHUR J. TARNOW, District Judge. Petitioner Xia Zhu ("Zhu"), a native and citizen of the People's Republic of China ("China"), seeks review of a final order of removal in which the Board of Immigration Appeals ("BIA") dismissed Zhu's appeal of the decision of the Immigration Judge. The Immigration Judge had: (1) denied Zhu's Application for Asylum; (2) denied withholding of removal, and; (3) denied relief under the Convention Against Torture ("CAT"). Additionally, the BIA denied Zhu's motion to remand her case to the Immigration Judge for consideration of purported new evidence.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr., has been substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

[**] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Pursuant to 8 U.S.C. § 1252, this Court has jurisdiction to review a final order of removal issued by the BIA. For the reasons that follow, Zhu's Petition for Review must be denied.

## I. BACKGROUND

### A. Factual Background

In April, 1999, Zhu arrived in the United States on a flight into Chicago's O'Hare airport. Upon Zhu's arrival without documents to authorize her admission into the country, an Immigration Inspector conducted an airport interview and took Zhu's sworn statement.[1] Zhu explained that she had traveled without a passport through Vietnam and Cambodia before landing in the United States. She also stated that she had left China for the United States because the Chinese government had forced her to abort a four-month pregnancy, and that since the abortion, her husband of two years had been drinking heavily and beating her. When the Inspector asked whether Zhu was fearful about being returned to her home country, Zhu responded that she was afraid that her husband, who she claimed despised her because she had aborted their child, would beat her to death, and that the Chinese government would fine her and physically harm her for having left the country illegally.

On the basis of these expressed concerns, Zhu was granted a Credible Fear Interview[2] on April 26, 1999, during which she repeated her claim about the forced abortion. Zhu was apparently

---

[1] This statement was contradicted in Zhu's later testimony before the Immigration Judge.

[2] *See* 8 C.F.R. § 208.30 ("[An] asylum officer . . . will conduct the interview in a nonadversarial manner, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture" in his or her home country.).

released from custody without receiving a hearing date. In 2004, when Zhu eventually filed an Application for Asylum, she attested once again that she suffered a forced abortion, stating that her "three-month pregnancy was forcibly aborted in China due to pregnancy before marriage."

In November, 2000, Zhu exchanged vows with her present husband in a "traditional" ceremony held at the Golden Unicorn Restaurant in New York City's Chinatown. The couple was legally married in Arkansas in March, 2004, and subsequently had three children: two sons, and then a daughter. It appears that no further action was taken in Zhu's immigration case until after she filed her first Application for Asylum and Withholding of Removal, also in 2004.

### B.     Procedural History

On February 9, 2004, Zhu – then pregnant with her third child – filed her first Application for Asylum and Withholding of Removal. In that document, Zhu repeated the substance of her prior sworn statements, adding that her mother and elder sister ("Mei") had been forcibly sterilized in China, and that she feared the same treatment. Zhu also expressed concern that if she were to be returned to China, her children would not receive healthcare, education, and employment benefits, because the Chinese government's family planning policy generally forbids and penalizes the conception of additional children beyond a firstborn male. In response to a written question requiring further explanation for an Application filed more than one year after a petitioner's last arrival in the United States,[3] Zhu cited a "change in [her] personal circumstances" that ostensibly excused her late filing. Specifically, Zhu explained that when she first arrived in the United States, she "had no

---

[3] *See* 8 C.F.R. § 1208.4(a)(2) (imposing a one-year statutory deadline for the filing of an Application for Asylum).

children and had no asylum claim," but that her subsequent multiple pregnancies constituted changed circumstances sufficient to support her 2004 asylum application.

A Notice to Appear dated June 8, 2004 – and mailed to Zhu at an address located in New York City's Chinatown – placed Zhu in removal proceedings, charged her as an alien lacking a valid visa or travel document, and further charged her as an alien who, by fraud or willful misrepresentation of material fact, had sought to procure a visa or other documentation to gain admission to the United States.

In a hearing conducted by an Immigration Judge in New York City on December 8, 2004, the Government withdrew the charge of fraud after Zhu entered a plea conceding her removability. The New York Immigration Judge, unconvinced that Zhu actually lived in New York, then transferred venue to Arkansas upon the Government's motion.

On March 9, 2005, before her hearing resumed in the transferree venue, Zhu filed a second Application for Asylum and Withholding of Removal. The second Application was updated to reflect the birth of Zhu's third child, and attached was an affidavit reiterating Zhu's fear that if she were returned to China, she would be forcibly sterilized and her children would be deprived of healthcare, education, and employment because they could not be registered in the government's "household registration system." Notably, Zhu withdrew her prior affidavit and stated that she had not, in fact, suffered a forced abortion in China. Still, Zhu maintained that both her mother and her sister, Mei, had been forcibly sterilized, and that both Mei and another sister had been granted asylum in the United States because they had suffered persecution for resisting the Chinese family planning policy.

4

On October 11, 2005, Zhu's case was resumed at a master calendar hearing conducted by the Memphis, Tennessee, Immigration Court that hears Arkansas asylum cases. The Immigration Judge adjourned the matter until March 23, 2006, when a Mandarin-English interpreter was scheduled to attend the proceedings.

After the March 23, 2006, hearing on the merits, the Immigration Judge entered an oral opinion in which he denied Zhu's Application(s) for Asylum, as well as her appended claims for withholding of removal and deferral of removal under Article III of the Convention Against Torture.

### i. *Findings of the Immigration Judge*

As a threshold matter, the Immigration Judge examined whether Zhu's Application for Asylum was timely filed, and if not, whether "extraordinary circumstances" or "changed circumstances" excused the late filing. Zhu had suggested that "extraordinary circumstances" inhered in the Government's failure to serve charging documents at the time of her entry into the United States. The Immigration Judge rejected that argument as contrary to the statutory requirement that an alien file an Application for Asylum within one year of arrival, if at all. Zhu had also argued that the births of her three children in the United States constituted "changed circumstances" that excused her late filing; the Immigration Judge did not address that argument directly. The Judge did note that Zhu's original story of her forced abortion may have stated a basis for asylum, but that Zhu had failed to follow up on that claim at any time within the approximately five years during which she had maintained the truth of the story. The Immigration Judge concluded that Zhu's Application for Asylum was untimely.

Nevertheless, the Immigration Judge proceeded to make findings of fact to be relied upon by the BIA in the event that the BIA reversed his determination that Zhu's Application was time-barred. Noting that the determination of an applicant's credibility is a finding of fact,[4] the Immigration Judge discussed Zhu's persistence in promoting her "forced abortion" story, held that Zhu's "explanations [were] not convincing," and found that Zhu had "not offered credible testimony." The Judge explicitly extended the credibility determination to all of Zhu's requested forms of relief, including the withholding of removal proposed under Zhu's CAT claim.

The Immigration Judge also found, as a matter of law, that Zhu had failed to meet her burden of proof as to any form of relief. Pointing to a lack of evidence to corroborate Zhu's own statements, the Judge noted that Zhu's sister, Mei, who "could probably [have] clear[ed] up some of th[e] inconsistencies," had not appeared to testify at the hearing. The record suggests that Zhu did not actually request Mei's presence in court, but instead "ma[de] representations that [her] sister was traumatized by having to come to [c]ourt and repeat her story" about Mei's own alleged sterilization at the hands of the Chinese government.

Instead, Zhu submitted an offer of proof as to the proposed testimony of her husband's uncle's wife, who would have described the witness's own forced sterilization in China. The Immigration Judge accepted the offer of proof, but did not hear the proposed testimony because he found that it would be cumulative to the background documentary material[5] submitted by the

---

[4] *See Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

[5] The government submitted "China Country Reports" for the years 2004 and 2005, and a "China Profile" for 2004. The former documents provide detailed information about the human

government, and that the witness's testimony would be minimally probative given the evidence already on the record. From the government's documentary material, the Judge extracted the following analysis:

> [D]iplomats of the United States government in China are unaware of any cases in which returnees from the United States were forced to undergo sterilization procedures on their return. Of course, this is not to say that [Zhu]'s children will not be disadvantaged in China. The profile makes that clear. However, this [proposed testimony] goes to [Zhu]'s shifting claim that she fears sterilization in China based upon the birth of her United States citizen children.

The Immigration Judge concluded that Zhu had not met her burden of proof under the "well-founded fear" standard governing asylum claims, nor under the "more likely than not" standard governing withholding of removal claims. Finding that Zhu had made no adequate showing of either past persecution or the likelihood of future persecution, he ordered that Zhu be removed to China.

*ii. Decision of the BIA*

On April 12, 2006, Zhu appealed the Immigration Judge's decision and moved for her case to be remanded to the Immigration Court for reconsideration of newly submitted evidence. On appeal, Zhu presented four arguments to the BIA: (1) the Immigration Judge erred in not finding that the birth of Zhu's third child was a "changed circumstance" supporting her otherwise untimely filed Application for Asylum[6]; (2) the Immigration Judge erred in concluding that Zhu would not face

---

rights practices of the Chinese government. The latter document provides information about the asylum claims of Chinese nationals, including descriptions of "country conditions" and an appendix focusing on the "national law on population and family planning."

[6] Zhu argued that the birth of her *third* child, specifically, should be considered the "changed circumstance" within one year of which her Application for Asylum was due. Specifically, Zhu argued that women from China's Lianjang County must undergo sterilization after the birth of a

future persecution in China because the Judge did not properly consider all of the documentary evidence[7] Zhu submitted; (3) Zhu's credibility issues were not relevant to the "family planning" theory underlying Zhu's asylum claim, and; (4) the BIA should remand her case, pursuant to *Shou Yung Guo v. Gonzales*,[8] for the Immigration Judge to determine the relevance of a family planning document (the "Brochure") from the Fujian Province of China.

On October 10, 2007, the BIA issued an Order dismissing Zhu's appeal and denying her motion to remand. The BIA adopted and affirmed the Immigration Judge's decision, and made several additional findings.

First, the BIA found that Zhu failed to establish that the Immigration Judge's adverse credibility finding was clearly erroneous. Zhu argued on appeal that the Immigration Judge had relied too heavily on Zhu's untruthful statements during her airport interview, but the BIA noted that the Immigration Judge had also considered Zhu's reiteration of the false abortion story in her later sworn testimony. On appeal, Zhu also cited case law acknowledging that an alien may fabricate testimony in an airport interview in order to escape persecution, but the BIA noted that – because Zhu had *not*, in fact, been subjected to a forced abortion in China – Zhu had not previously suffered, and had no reason to fear, persecution in China at the time of her entry into the United States. The

---

second child, and that because she now has three children, Zhu would be forcibly sterilized if she returned to China.

[7] Zhu referred to the "country profiles" discussed above, and also argued specifically that the Judge did not properly consider a Family Planning Brochure from the Lianjiang County, Fujian Province of China.

[8] 463 F.3d 109 (2d Cir. 2006).

BIA therefore concluded that there was no error in the Immigration Judge's adverse credibility determination.

Second, the BIA found that the Immigration Judge had properly determined that Zhu had failed to submit her Application for Asylum within one year, and that she failed to establish an exception to the filing deadline. The BIA rejected Zhu's claim of "changed circumstances," and found that her second asylum claim was not completely independent from her initial application.

Third, in response to Zhu's argument that the Immigration Judge failed to consider the family planning Brochure, the BIA noted that the Brochure was undated, and that its contents contradicted the State Department Reports in the record. Citing prior case law that has adopted the State Department's assertion that, "by national regulation, children born overseas are 'not . . . counted' for birth planning purposes when the parents return to China," the BIA found that Zhu had failed to establish error in the Immigration Judge's decision, and dismissed her appeal. *See Matter of J-W-S*, 24 I&N Dec. 185, 190 (BIA 2007); *see also Matter of S-Y-G*, 24 I&N Dec. 247 (BIA 2007).

Finally, the BIA addressed Zhu's motion – in which Zhu relied specifically on *Shou Yung Guo* – to remand the case to the Immigration Judge for consideration of the Brochure. The BIA noted that, after the Second Circuit's remand of *Shou Yung Guo* for consideration of a family planning document, it was determined that the document did *not* compel the reopening of the record in that case. *See Matter of S-Y-G*, 24 I&N Dec. at 259. Additionally, the BIA observed that Zhu's proposed "new evidence" – the Brochure – had been "available, discoverable, and presentable" at the time of her initial hearing, and therefore could not be used to support a motion to remand.

Accordingly, the BIA denied Zhu's motion to remand, and this appeal ensued.

## II. STANDARD OF REVIEW

When the BIA adopts the decision of an immigration judge and supplies additional commentary, this Court directly reviews both the judge's decision and the BIA's comments. *See Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). The Court applies a *de novo* review to questions of law concerning immigration proceedings. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). Findings of fact, including adverse credibility findings, are reviewed under the "substantial evidence" standard; that is, the BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" *See* 8 U.S.C. § 1252(b)(4)(B); *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2005). Under the deferential "substantial evidence" standard, "[a] reviewing court should not reverse "simply because it is convinced that it would have decided the case differently." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (quoting *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992)).

## III. ANALYSIS

### A. Review of Timeliness Determinations Governing an Asylum Claim

The Government argues that the Immigration Judge and the BIA properly found that Zhu's Application for Asylum was untimely filed, and that this Court lacks jurisdiction to review the timeliness determinations made in the Immigration Court and agency hearings below. Zhu's brief does not address this issue.

The controlling statute provides that asylum is not available "to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within [one] year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The Act explicitly provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application. 8 U.S.C. § 1158(a)(3). Furthermore, Sixth Circuit case law has established that adjudications of "changed or extraordinary circumstances" as potential exceptions to the timeliness requirement for an asylum claim are also "predominantly factual" determinations that this Court has no authority to review. *See Fang Huang v. Mukasey*, 523 F.3d 640, 650-51 (6th Cir. 2008); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

Here, there is "substantial evidence" – in fact, the undisputed record clearly establishes – that Zhu last entered the United States in 1999, and did not file her first asylum application until 2004. On that basis, both the Immigration Judge and the BIA found Zhu's application(s) to be untimely,[9] and this Court has no authority to disturb those rulings on appeal.

Thus, because the Court is statutorily prohibited from reconsidering timeliness determinations regarding asylum application(s), we dismiss Zhu's appeal as to the denial of her asylum claim.

**B.      Review of Issues First Presented on Appeal to This Court**

---

[9] For the purpose of creating a complete record, both the Immigration Judge and the BIA proceeded beyond the threshold "timeliness" determination to conduct analysis on the merits of Zhu's claims. In response, the parties have briefed the issue on this Petition for Review, but the Court need not engage the merits of Zhu's untimely filed asylum application.

The Government further argues that this Court may not consider issues that are now presented in Zhu's Petition for Review, but which were not raised before the Immigration Judge or on appeal to the BIA. Zhu's brief does not address this issue.

Pursuant to 8 U.S.C. § 1252(d)(1), a "court may review a final order of removal only if. . . the alien has exhausted all administrative remedies available to the alien as of right." The Government lists several Sixth Circuit cases that have implemented that statutory provision to deny appellate review of issues not raised and presented to the BIA. *See Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) ("this Court lacks jurisdiction to review any issues that have not been raised and administratively exhausted below"); *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("[a]lthough an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA," or appellate review of those claims is precluded); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004) ("to the extent that [a petitioner] has failed to exhaust his administrative remedies with respect to certain claims, this court does not have jurisdiction to address those claims").

In this case, Zhu's brief to the BIA enumerated four issues, *supra*, to be presented on the initial appeal of the Immigration Judge's ruling. The preserved issues did not include the due process claim that Zhu argues here at some length: that is, that her Fifth Amendment rights were "violated because she was never given notice that the [Immigration Judge] could question her credibility based on her failure to present her sister [Mei] as a witness," and the Immigration Judge failed to grant her additional time to present Mei's testimony. To the extent this due process claim raises a correctable procedural error, Zhu's failure to raise it at the BIA hearing precludes this

Court's review of her due process claim. *Cf. Ramani*, 378 F.3d at 558. In any event, the Immigration Judge did not base his credibility determination solely on the failure to present Mei's testimony; rather, he found that Zhu's inconsistent statements and positions undermined her credibility. Further, the transcript excerpt Zhu relies on is taken out of context. The Immigration Judge did not refuse a request for more time to obtain Mei's testimony. The colloquy concerned a request for an offer of proof regarding Zhu's husband's uncle's wife's testimony; Zhu's counsel did not ask for an adjournment to secure Mei's presence. Zhu has not established that her right to Due Process was violated.

The Government also suggests that, because Zhu's brief to the BIA focused almost exclusively on the Immigration Judge's denial of her asylum claim, Zhu failed to preserve appellate review of her two other claims: withholding of removal, and relief under the CAT. The Government notes that, although Zhu's BIA brief concluded by requesting relief on all three grounds, Zhu advanced no analysis to support claims for withholding of removal or relief under the CAT.

The gist of Zhu's claims for withholding of removal and relief under the CAT is that she sufficiently established that she faces a clear probability of involuntary sterilization. We find no error in the BIA's resolution of the issue as presented to the Board. Any additional claims were not preserved for appellate review.

### C.      Denial of Remand to the Immigration Judge

On appeal to the BIA, Zhu sought to reopen her case before the Immigration Judge for consideration of ostensibly new evidence in the form of the family planning Brochure. The BIA

denied Zhu's motion to remand, and Zhu now renews her argument before this Court. The Government opposes Zhu's motion.

Under 8 C.F.R. § 1003.2(c)(1), "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Furthermore, the BIA's resolution of a motion to reopen is highly discretionary: "[t]he Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). This broad discretion is justified by a "strong public interest" in attaining finality in immigration proceedings.[10]

This Court reviews the BIA's denial of a motion to remand under an "abuse of discretion" standard: the "Court must decide whether the denial of [the] motion to reopen [removal] proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982).

Here, there is no evidence that the BIA's denial of Zhu's motion to remand was irrational so as to constitute an abuse of discretion. Furthermore, Zhu has made no contention that her newly-attached Family Planning Brochure was, in fact, unavailable or undiscoverable at the time of her

---

[10] "The reasons why motions to reopen are disfavored in deportation proceedings are comparable to those that apply to petitions for rehearing, and to motions for new trials on the basis of newly discovered evidence. There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *INS v. Abudu*, 485 U.S. 94, 107 (1988).

prior hearing before the Immigration Judge. The mandatory language of 8 C.F.R. § 1003.2(c)(1) ensures that remand "shall not be granted" absent such a showing. On that basis, the BIA denied Zhu's original motion, and on that basis, this Court must similarly deny Zhu's renewed motion to remand.

## IV. CONCLUSION

As to Zhu's asylum claim, this appeal must be dismissed because the Court is statutorily prohibited from reconsidering the controlling timeliness determinations below.

As to Zhu's requests for withholding of removal and for relief under the CAT, as well as her constitutional due process argument, we dismiss the appeal as to those issues not preserved, and deny as to preserved issues for lack of merit.

Finally, because Zhu has not made the required showing that her purported new evidence was indeed undiscoverable at the time of her prior hearings, the Court must also deny Zhu's renewed motion to remand this action to the Immigration Judge.

For the foregoing reasons, Zhu's Petition for Review is DENIED.