RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0260P (6th Cir.)
File Name: 04a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

SEFIT RAMANI; LINDITA
RAMANI; and ARDIT RAMANI,
*Petitioners,*

v.

JOHN ASHCROFT, Attorney
General of the United States;
IMMIGRATION AND
NATURALIZATION SERVICE,
*Respondents.*

No. 02-4362

On Appeal from the Board of Immigration Appeals.
Nos. A77 621 623; A77 621 624; A77 621 625.

Argued: June 9, 2004

Decided and Filed: August 4, 2004

Before: SILER and GIBBONS, Circuit Judges; REEVES,
District Judge.[*]

———————

[*] The Honorable Danny C. Reeves, United States District Judge for
the Eastern District of Kentucky, sitting by designation.

———————

## COUNSEL

**ARGUED:** Richard A. Kulics, IMMIGRATION LAW
CENTER, Birmingham, Michigan, for Petitioners. Daniel E.
Goldman, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondents. **ON BRIEF:** Richard
A. Kulics, IMMIGRATION LAW CENTER, Birmingham,
Michigan, for Petitioners. Alison Marie Igoe, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondents.

———————

## OPINION

———————

DANNY C. REEVES, District Judge. Petitioners Sefit
Ramani ("Ramani"), Lindita Ramani, and Ardit Ramani seek
review of the Board of Immigration's ("BIA") decision
affirming the denial of their requests for asylum, withholding
of removal, and protection under the Convention Against
Torture. For the reasons that follow, we **AFFIRM** the BIA's
decision.

### BACKGROUND

The Ramanis are ethnic Albanians and citizens of
Macedonia who entered the United States without inspection
on or about October 19, 1999. Subsequently, on October 21,
1999, the Immigration and Naturalization Service ("INS")
charged Ramani with being an alien present in the United
States without having been admitted or paroled into the
country and instituted removal proceedings against him. At
the initial removal hearing, Ramani requested permission to
file a written application for asylum, which was submitted
September 19, 2000. The court set a hearing date on the
merits of Ramani's application for April 13, 2001.

Approximately two weeks before the merits hearing, Ramani sought to offer two documents for admission into evidence to support his request for asylum. The first document was represented to be a copy of a legal summons from a Macedonian court directing Ramani to appear on October 12, 1999. The second document was a purported copy of an extract from the Macedonian penal code. At the April 13, 2001 hearing, the INS objected to the introduction of these documents. After the Immigration Judge ("IJ") asked about the location of the originals of the documents, Ramani testified that he had given the summons to his attorney who claimed to have misplaced it. Ramani further testified that his uncle mailed a copy of the penal code extract to him after obtaining it from an attorney in Macedonia. He stated that he had torn off the portion of the document that he felt was irrelevant. Ramani's attorney admitted that he had made no attempt to obtain a copy of the Macedonian law from a source from which the IJ could have taken judicial notice.

During the hearing Ramani testified that he is a citizen of Macedonia but that he is an ethnic Albanian. He stated that prior to arriving in the United States he lived in Tateshposto, Struga, which is approximately twenty kilometers from the Albanian border. Ramani testified that his association with the police began in 1997 when he began to participate in demonstrations that promoted rights for ethnic Albanians. He indicated that the group that typically organized the demonstrations was "some kind of a party, VDSH, Democratic Party of Albania." Although Ramani testified that he was a member of this group, he claimed that he had left his membership card at his mother's house in Macedonia. He stated that the group conducted several additional gatherings in 1998. He further claimed that his problems with the police resurfaced in 1999 after a group of Albanian refugees arrived from Kosovo. Ramani stated that, in September 1999, following a demonstration in Valesht, he was stopped by the police as he was returning home. According to Ramani, the officers beat him several times over a thirty minute period. As a result of this incident, he stated

that he was supposed to appear in court on October 12, 1999, but he was afraid to do so. Specifically, he testified that he was fearful of being "torture[d] while in the custody of the police."

Lindita Ramani testified that the police came to her house and arrested her husband on two occasions. While she could not remember the dates of those arrests, she estimated that it was from "1997 and on." She indicated that the last demonstration she recalled her husband attending was in 1999. However, she could not recall how long after this demonstration they came to the United States.

After evaluating the testimony presented at the hearing, the IJ denied Ramani's request for asylum, withholding of removal, and protection under the Convention Against Torture. Specifically, the IJ found that Ramani was not a credible witness. He noted that Ramani could not remember any of the organizers of the July 1997 demonstration other than Rufi Osmani. Also, he pointed out that Ramani's references to his arrests were very general and that his testimony was vague, in that he could not specifically remember the dates of his alleged arrests.

The IJ also concluded that Ramani's story was not corroborated by the *Country Report for Macedonia*, which was offered into evidence by the INS. Although the IJ acknowledged that this report related to incidents occurring in 2000, not 1999 (the general period when Ramani claimed his problems arose), he found that the report did not corroborate Ramani's claim that ethnic Albanian minorities were tortured by police for participating in demonstrations. The IJ noted that the *Country Report* indicated that the Macedonian government generally respected its citizens' right to freedom of assembly and that demonstrations regularly occurred there without incident.

The IJ declined to admit into evidence the purported copy of the legal summons and the alleged extract of the

Macedonian penal code because the translation of these documents did not comply with 8 C.F.R. § 3.33. In addition, the IJ found that the document purporting to be a copy of a legal summons was not the original and had not been properly authenticated. The IJ also refused to take judicial notice of the document purported to be an extract from the Macedonian penal code. He noted that Ramani's attorney had made no attempt to produce the law from available, admissible sources.

Ramani filed a notice of appeal of the IJ's decision with the BIA and objected on two grounds. Specifically, he stated that

> [t]he Immigration Judge erred in finding that Respondent did not qualify as a refugee and that [he] did not show that he had a well founded fear of persecution, despite the fact that Respondent presented substantial testimony that [he] did qualify as a refugee and had a well founded fear of persecution.

> The Immigration Judge erred in finding that Respondent's testimony, and demeanor was of questionable credibility even though at trial Respondent's testimony, and demeanor was credibile [sic], and that it was believable, consistant [sic] and sufficiently detailed to be found credible.

In his BIA brief, however, Ramani simply alleged that the IJ was biased. Notably, Ramani did not object in his BIA appeal brief to the IJ's refusal to admit the two documents that were at issue at the merits hearing. In addition, Ramani did not challenge the IJ's finding that he was not a credible witness in his brief to the BIA.

Ultimately, the BIA rejected Ramani's claim of prejudice stating that

> any opinion formed by the Immigration Judge on the basis of facts introduced or events occurring in the course

of the current proceedings may not constitute a basis for a finding of bias in the absence of a display of a deep-seated favoritism or antagonism that would make fair judgment impossible.

The Board further concluded that Ramani received a full and fair hearing and agreed with the IJ that he had not met his burden of proving eligibility for asylum, withholding of removal, or relief under the Convention Against Torture.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over Ramani's request for asylum pursuant to the Immigration and Nationality Act § 242(a)(1). *See* 8 U.S.C. § 1252 (a)(1). However, to the extent that Ramani has failed to exhaust his administrative remedies with respect to certain claims, this court does not have jurisdiction to address those claims, as discussed *infra*. *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994); *Dokic v. INS*, 899 F.2d 530, 532 (6th Cir. 1990). Upon review of the claims that are properly before the court, the panel must consider whether the BIA correctly determined that Ramani failed to sustain his burden of establishing eligibility for asylum. *See* 8 C.F.R. § 208.13(a) (an alien applying for asylum bears the burden of demonstrating that he or she is a refugee). In reviewing decisions rendered by the BIA that an alien is not eligible for asylum, this court reviews administrative findings of fact concerning whether the alien qualifies as a refugee under a substantial evidence test. *Yu v. Ashcroft*, 364 F.3d 700, 702-703 (6th Cir. 2004) ("findings of fact are [reviewed under 8 U.S.C. § 1252(b)(4)(B), which] basically codifies the Supreme Court's substantial evidence standard"). Thus, an IJ's factual determinations will be reversed only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## THE USE OF A SUMMARY AFFIRMANCE

Ramani argues that the BIA's brief dismissal of his appeal constituted a violation of due process. He concedes, however, that the BIA "certainly has the authority to affirm, without opinion, or issue a brief opinion, in any case in which the Board member concludes that there is no legal or factual basis for reversal of the decision by the Service or the [IJ]," citing 8 C.F.R. § 1003.1, which provides for summary affirmance. This provision permits the BIA to issue summary affirmances, with little or no discussion, as well as decisions without opinion in immigration appeal cases meeting certain criteria. Ramani suggests that the use of these affirmances can violate due process in certain circumstances. This court, however, has recently examined the use of summary affirmances, concluding that their use does not violate due process. *Denko v. INS*, 351 F.3d 717, 726-30 (6th Cir. 2003).

## IMPROPER CONSIDERATION OF EVIDENCE

Before a federal court may assert jurisdiction over an alien removal appeal, the alien must have exhausted all administrative remedies. 8 U.S.C. § 1252(d)(1). The United States argues that Ramani's claim that the IJ improperly considered and disregarded certain evidence was not properly presented to the BIA and, therefore, is not subject to review by this court.

Ramani argues that the IJ improperly relied "on evidence which was not admitted[] in order to reach his decision" and misused "the evidence which had been admitted." Regarding his first argument, he complains that the IJ did not receive the Macedonian summons into evidence, yet used that exhibit to impugn Ramani's credibility. He next argues that the IJ should not have relied upon the *Country Report for Macedonia*, a political and social analysis of Macedonia produced by the State Department. Ramani has numerous complaints both about the State Department's reliability as well as the IJ's "selective quotations" from the report.

None of Ramani's arguments concerning the consideration of evidence was properly presented to the BIA. It is proper for an appellate court to consider waived all issues not raised in an appellant's briefs, even if the issue has been raised in the notice of appeal. *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 528 n.1, 544 n.8 (6th Cir. 2002); *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999). Neither Ramani's notice of appeal to the BIA, nor his BIA appeal brief, advanced his current argument that the IJ misused certain evidence. While his BIA appeal brief did discuss the use of the *Country Report for Macedonia*, noting that "[t]hese reports are infamous for providing an overly rosy picture of most countries," it did not make his current argument that "State Department Opinions are not always reliable," it provided no legal basis for this argument, and it was mentioned only in the context of Ramani's claim that the IJ was biased. By failing to properly present these claims to the BIA, Ramani failed to exhaust his administrative remedies on these issues.

The purpose of Section 1252(d)(1)'s exhaustion requirement is (1) to "ensure that the INS, as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims," *Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir. 2004); (2) to "avoid premature interference with the agency's processes," *Sun v. Ashcroft*, 370 F.3d 932, 940 (9th Cir. 2004); and (3) to "allow the BIA to compile a record which is adequate for judicial review." *Dokic*, 899 F.2d at 532. In this case, these goals would be subverted by considering an issue that was not properly presented to the BIA. Had Ramani presented his current arguments to the BIA, this matter could have been properly dealt with by immigration judges whose experience in these matters is useful. In addition, the record on these issues could have been more fully developed if they had been presented below.

Unlike many contexts in which exhaustion of administrative remedies is a court-created doctrine, Section 1252(d)(1) provides that federal courts are without jurisdiction to hear an immigration appeal when administrative remedies have not been exhausted. *Perkovic*, 33 F.3d at 619. In *Chung Young Chew v. Boyd*, the Ninth Circuit held that

> [f]ailure to take an available appeal to the Board from an order of deportation constitutes a failure to exhaust administrative remedies, thereby depriving a court of appeals of jurisdiction to review any aspect of such order. It follows that failure to raise, on such an appeal, a particular question concerning the validity of the order constitutes a failure to exhaust administrative remedies with regard to that question, thereby depriving a court of appeals of jurisdiction to consider that question.

309 F.2d 857, 861 (9th Cir. 1962); *accord Marrero v. INS*, 990 F.2d 772, 779 (3d Cir. 1993); *Alvarez-Flores v. INS*, 909 F.2d 1, 8 (1st Cir. 1990); *Farrokhi v. INS*, 900 F.2d 697, 700 (4th Cir. 1990); *Youssefinia v. INS*, 784 F.2d 1254, 1258 (5th Cir. 1986); *Bajwa v. Cobb*, 727 F. Supp. 53, 56 (D. Mass. 1989). These cases provide a stricter requirement than merely requiring an alien to exhaust all avenues of appeal; they further require the alien to preserve each claim by presenting it to the BIA.

In this circuit, several cases have suggested that Section 1252(d)(1)'s exhaustion requirement mandates that only those claims presented to the BIA may be appealed to this court. *Cf. Perkovic*, 33 F.3d at 619 (finding that claims had been exhausted because "they were presented to the immigration judge and then to the [BIA], which definitively resolved the claims on their merits"); *Dokic*, 899 F.2d at 532 ("[a]t no time during the course of these administrative proceedings did petitioners present their claims that counsel was ineffective and that the record was inadequate" and thus the claims were unreviewable because they had not been administratively

exhausted); *Harchenko v. INS*, No. 00-3789, 22 Fed. Appx. 540, 543 (6th Cir. 2001) ("[w]e shall only consider the sufficiency of the IJ's decision and the BIA's affirmance of that decision. Petitioner's other arguments are precluded as unexhausted issues, which this court has no jurisdiction to review").

In *Perkovic*, this court recognized that if an alien presents both exhausted and unexhausted claims, only those claims that are properly exhausted may be considered. 33 F.3d at 619. The *Perkovic* court also noted that in *Dokic* the court had concluded that the alien's claims were unexhausted because the alien had not presented his present claims during the course of administrative proceedings. *Id.* at 620 n.4; *see Ivezaj v. INS*, 84 F.3d 215, 219 (6th Cir. 1996), *superceded by statute on other grounds as stated in Visha v. INS*, No. 00-3446, 51 Fed. Appx. 547, 551 (6th Cir. 2002), ("*Perkovic* distinguished *Dokic* on the grounds that exhaustion was not found in *Dokic* because Dokic was making a due process argument not previously raised with the BIA, and so, by holding Dokic's appeal was barred by the exhaustion doctrine, the *Dokic* court was really insisting that appellate issues must be raised below.").

Having considered these authorities, we hold that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal. Because the arguments currently presented by Ramani were not presented to the BIA, they are not subject to review by this court.

## REVIEW OF IMMIGRATION JUDGE'S OPINION

Ramani also argues that the court should not review the BIA's decision, but should review the IJ's decision directly since it was much more thorough than the BIA's. When the BIA utilizes a summary affirmance, it is proper to review the IJ's decision directly. *Denko*, 351 F.3d at 730. In this case, however, the BIA did not utilize a summary affirmance.

Rather, it issued a decision disposing of the single issue presented in Ramani's BIA appeal brief, *i.e.*, whether the IJ was biased. In his BIA appeal brief Ramani simply claimed that the "major stumbling block for this claim is the Court's overwhelming prejudice. . . . The result is a fundamental denial of due process. . . . The aims of Justice, in this administrative Court which is a part of the U.S. Department of Justice, have been completely perverted in this matter." Ramani's five-page BIA appellate brief was little more than an attack on the IJ's impartiality. While his BIA appeal brief does briefly discuss the use of the *Country Report for Macedonia* (an issue he now raises on appeal), this issue was not discussed as a basis for his BIA appeal, as it was mentioned only in passing, in reference to the IJ's supposed "biased rendition" of the *Country Report*. The thrust of the BIA brief was that the IJ was biased. It was the only issue clearly advanced by Ramani, and discussion of this issue continued throughout the entire brief.

Ramani did briefly argue that he had a reasonable fear of persecution in his BIA appeal brief. Perhaps because Ramani provided little support for this argument, relying only on conclusory statements, the BIA did not discuss this argument in affirming the IJ. It is not necessary to directly review the IJ's decision on this issue, however, because Ramani did not advance this argument in his current appeal to this court. Regarding the issues the Petitioner did present to this court, *i.e.*, whether the IJ misused certain evidence, this court will not review the IJ's decision directly on these issues because they were not presented to the BIA, and thus Ramani did not exhaust his administrative remedies for these claims. Therefore, in this case, review of the BIA's opinion is sufficient to resolve those issues properly before this court.

The petition for review of the Board of Immigration Appeals is **DENIED**.