**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 09a0512n.06

No. 08-4588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 24, 2009**

LEONARD GREEN, Clerk

SILEYE YOUSSOUF SAM,
    *Petitioner*

            v.

ERIC H. HOLDER, United States Attorney General
    *Respondent*
_____/

On Appeal from the Board of
Immigration Appeals

**BEFORE:  KENNEDY, BATCHELDER, and McKEAGUE, Circuit Judges**.

    **KENNEDY, Circuit Judge.**  Petitioner Sileye Youssof Sam, a native and citizen of the Republic of Congo, appeals a final removal order issued by the Board of Immigration Appeals (BIA). The BIA's order was issued on October 30, 2008 and affirmed the decision of the Immigration Judge (IJ) denying Sam's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  JA 105-06.  The IJ had denied Sam's claims on March 12, 2007, holding that, although Sam was credible, his failure to provide adequate corroboration for his claims prevented him from meeting his burden of proving past persecution or a well-founded fear of future persecution.  In the alternative, the IJ held that based on the totality of the circumstances, Sam had firmly resettled in Senegal following his departure from Congo.  We need not reach the issue of firm resettlement, however, because the record supports the IJ's finding that Sam failed to prove both past persecution or a well-founded fear of future persecution.  Sam not only failed to provide reasonably available evidence to corroborate his own account of his past persecution but also failed to provide record evidence in support of his claim that his fear of future persecution was well-founded.

Accordingly, we find that the IJ's denial of Sam's asylum claim was supported by substantial evidence and DENY the petition for review.

## BACKGROUND

Sam's claims for asylum, withholding of removal, and CAT protection focus on his fear of being persecuted on account of his political opinion if forced to return to his home country, the Republic of Congo. Sam testified to the facts relevant to this asylum claim during his hearing before the IJ. Sam testified that, prior to his departure, he had worked as a high school teacher in Brazzaville, Congo, from 1994-96.

Sam's testimony described the political situation in Congo during that time. Congo's 1992 presidential election was won by Pascal Lissouba, who represented "a political party made up from mostly minority ethnic groups." JA 30. With that victory, Lissouba defeated the incumbent Denis Sassou Nguesso, the candidate of the Congolese Worker's Party. In 1993, Lissouba's party also won control of Parliament. Following these elections, the Congolese Worker's Party refused to allow Lissouba's party to take office and resorted to violence. ("[A]fter the elections they took up arms."). While Sam was not an official member of any political party and did not explicitly support Lissouba, in his private beliefs he was a "sympathizer for Lissouba." Although the director at his school directed the teachers not to "speak to...the students about the country situation," Sam testified that "when the students came to class, they would ask you about their, about problems and you cannot not answer their questions."

In the fall of 1996, the headmaster of the school at which he taught "denounced" him and other teachers for their support of prime minister Bernard Kolelas, who was also a member of the minority party. On October 26, 1996, several soldiers arrested Sam and his brother at their home

and brought them to a school where they were detained along with about thirty others. The soldiers told him, "you are under arrest because you are a supporter of the prime minister." During the nine days they were detained there, Sam and his brother were beaten with belts and batons daily, "sometimes several times a day." Sam suffered a permanent scar on his arm from where a soldier burned him intentionally with a cigarette. When he asked why he was detained, the soldiers stated that "the teachers were giving (sic) some subversive ideas and giving them to schools."

After nine days, when the soldiers guarding the school were forced to leave to address the increasing fighting occurring in the area, Sam and the other detainees fled to Congo's border with Gabon. At the border, a truck provided several of the detainees a ride to a refugee camp in Kikoni, Gabon. Sam and his brother remained there for three to four weeks. After that time, Sam and his brother traveled to Senegal to seek medical treatment for his brother, who had been traumatized by his time in the refugee camp. Sam's brother received treatment for "shock trauma," and they remained in Senegal for almost seven years. Although they obtained lodging and employment in Senegal through Abraham Lee, a "good friend," they never applied for a refugee card nor did they obtain authorization to work legally in Senegal. Abraham Lee helped Sam obtain a false Senegalese passport and United States visa for $4,000, and Sam traveled to the United States on November 2003.

Sam filed an affirmative application for asylum on July 21, 2004. He was issued a Notice to Appear on that same day, charging him with removability under section 237(a)(1)(A) of the Immigration and Nationality Act (INA). For reasons explained herein, the IJ denied Sam's application on March 12, 2007. In a per curiam opinion, the BIA summarily affirmed the decision

of the IJ.   The BIA noted that, because Sam had failed to meet his burden of proof, it was not necessary to reach the issue of firm resettlement.   Sam timely appealed to our court.

## ANALYSIS

### I.  Standard of Review and Applicable Law

When the BIA summarily affirms of the decision of an immigration judge, "we review the [immigration judge] decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).   In determining whether an applicant has failed to establish eligibility for asylum, we assess whether the administrative determination below is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Klawitter v, INS*, 970 F.2d 149, 151-2 (6th Cir. 1992).   The Court will reverse only if the applicant can prove that the evidence compels a contrary conclusion.   *Almuhtaseb v. Gonzales*, 453. F.3d 743, 749 (6th Cir. 2006); INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B).

In order to be granted asylum, an applicant must prove that he is a "refugee." *See* 8 C.F.R. 1208.13(a).  The INA defines a "refugee" as a person unable to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The determination of whether an individual is eligible for asylum involves two steps. First, the applicant must prove she is statutorily eligible by establishing a "well-founded fear of persecution." An applicant can demonstrate a well-founded fear of persecution by both subjective and objective evidence. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987). If the applicant establishes that he suffered past persecution in his home country, he is presumed to have a well-founded fear of persecution.  8 C.F.R. § 1208.13(b)(1). Second, the applicant must show that the IJ should exercise

4

his discretion to grant asylum. *See Klawitter v. INS*, 970 F.2d 149, 151 (6th Cir. 1992)(quoting *Rodriquez-Rivera v. INS*, 848 F.2d 998, 1001 (9th Cir.1988)).

**II. Asylum Claim**

Corroborating evidence is not necessarily required to establish an applicant's eligibility for asylum. In determining whether an asylum applicant has met his or her burden to prove a well-founded fear of persecution,

> "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.... Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."

*Lin v. Holder*, 2009 WL 1323443 at *6 (6th Cir. May 14, 2009)(quoting 8 U.S.C. 1158(b)(1)(B)(ii)); *Perkovic v. I.N.S.*, 33 F.3d 615, 621 (6th Cir. 1994)( holding that an applicant's own testimony may be sufficient in itself to establish asylum eligibility if it is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear."). Even in cases where, as here, the IJ finds the applicant to be credible,"where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided.... The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his or] her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir.2004)(citation omitted).

While an applicant's own testimony, in some cases, may be sufficient to sustain his or her burden of proof, we agree with the IJ's determination that, in this case, corroborating evidence was reasonably available to Sam. The IJ pointed to several individuals from whom it would be

5

reasonable to expect corroboration. The IJ found relevant that Sam provided no affidavit or letter from his brother, who Sam testified was living in Paris, France at the time of the hearing. This was especially relevant in light of the fact that Sam's brother had experienced first-hand the persecutory incident alleged by Sam and had fled the country with Sam. In addition, the IJ pointed to the lack of an affidavit or letter from Abraham Lee, Sam's "good friend" who had provided him assistance in traveling to Senegal and in obtaining a fraudulent Senegalese passport. Finally, the IJ noted that Sam should have attempted to obtain a letter or affidavit from his former roommate, a Senegalese friend living in Cleveland, to whom Sam may have spoken about his experiences in Congo.

In light of his testimony and the documentary evidence available in the record, the IJ's determination that Sam did not meet his burden to provide "reasonably available" corroboration was supported by substantial evidence. Based on existing precedent in our Circuit, we are not compelled to conclude otherwise. In *Dorosh*, the asylum applicant explained her failure to obtain a letter from her mother in Ukraine by testifying that "her letters did not reach her mother, her mother had no telephone and had to go to the post office to call her, and any attempts to talk about petitioner's asylum case or obtain affidavits from others would have jeopardized her mother's safety." 398 F.3d at 383. Our court found this explanation inadequate, stating that "[w]hile contact may not have been convenient, regular, or private, it was sufficient to have allowed Petitioner to obtain a previous letter from her mother in which her mother documented her own mistreatment. Petitioner could have requested a letter in a manner that minimized any risk of sensitive statements being overheard." *Id.* Though cases of this type are certainly fact-sensitive, it appears that the explanation presented by petitioner in the present case clearly falls short in light of the explanations for lack of corroboration which were found inadequate in *Dorosh*. *See id.*

6

Furthermore, the IJ properly found that Sam failed to provide a reasonable explanation for the absence of this corroboration. Sam's explanation for the absence of corroborating evidence from his brother was that, because his brother lacked any "identification papers," Sam could not prove that the two were in fact related. When asked why he failed to obtain an affidavit from Abraham Lee, he stated that he did not ask Lee for a letter because he "didn't think that it would have weight." Similarly, when questioned as to why he did not ask his former roommate to testify on his behalf, he stated "I didn't believe that that was going to have any heavy weight on the case." As the government's brief points out, Sam's assertion that he did not realize the importance of obtaining corroborating evidence from Lee or his roommate does not carry much weight in light of the fact that Sam is represented by an attorney.

In the absence of sufficient evidence to establish past persecution, Sam provides inadequate evidence that his fear of future persecution is well-founded. The IJ found that "I do not believe that the record evidence, including the current country condition evidence as established by the State Department report, reveals any reasonable chance of persecution of a person in respondent's shoes." While he noted that "there are some significant and continuing human rights problems in the Republic of Congo," he nonetheless concluded that "there is nothing in the State Department Report or other record evidence to show that a person of Lary ethnicity who supported a former prime minister of the country over a decade ago and who has been out of Republic of Congo for over a decade would face any reasonable chance of persecution should he return to that country today." After a review of the record evidence, we find that substantial evidence supported this conclusion. While the 2006 State Department Report does reveal that former president Nguesso, who was the source of Sam's alleged persecution, still holds the office of president in Congo, there is no evidence

7

in that Report to suggest that someone in Sam's position would face a reasonable chance of persecution upon his return to Congo. The Report provides no evidence that the current Congolese government is targeting people of Lary ethnicity or would target a teacher who supported the opposition nearly eleven years ago and has not since been involved in subversive activities. The question before us is whether the record "compels" the conclusion that the IJ erred in finding that Sam did not have a well-founded fear of future persecution. *See Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999). We conclude that it does not.

Accordingly, we agree with the IJ that corroborative evidence of Sam's past persecution and his fear of future persecution could be "reasonably expected" and that Petitioner's explanation for its absence was inadequate. Accordingly, we find that he failed to sustain his burden of proof and affirm the decision of the IJ and BIA as to his asylum claim.

## III. Withholding of Removal and CAT Claims

Sam failed to raise his claims for withholding of removal and CAT protection before the BIA, and the BIA made no mention of these alternative avenues for relief. Under 8 U.S.C. § 1252(d)(1), we may exercise jurisdiction in immigration appeals only after the applicant has exhausted all of his administrative remedies. In *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2005), we held that we can only review claims that have been presented to the BIA and considered on their merits. In *Ramani*, we noted the reasons for this exhaustion requirement, stating that if these issues had been presented below, they could have "been properly dealt with by immigration judges whose experience in these matters is useful" and "the record on these issues could have been more fully developed." *Id.* at 559. Finally, citing *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994), we recognized that if an applicant presents both exhausted and unexhausted claims on appeal, "only those claims that are

properly exhausted may be considered." *Ramani*, 378 F.3d at 560.  Because Sam failed to exhaust his administrative remedies as to these claims, we have no jurisdiction to address them.  *See* 8 U.S.C. 1252(d)(1).

## CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the Board of Immigration Appeals and DENY the petition for review.