NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0131n.06

No. 07-4418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 01, 2010**
LEONARD GREEN, Clerk

MOUSSA CAMARA,                              )
                                           )
    Petitioner,                            )
                                           )
V.                                         )          ON PETITION FOR REVIEW
                                           )          FROM THE BOARD OF
ERIC H. HOLDER, JR., Attorney General,     )          IMMIGRATION APPEALS
                                           )
    Respondent.                            )          OPINION
                                           )

BEFORE:    SILER, ROGERS, and McKEAGUE, Circuit Judges.

    **McKEAGUE, Circuit Judge**. Petitioner Moussa Camara ("Camara") appeals the order of

the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ")

denying Camara's petition for asylum. As we explain below, Camara's claims for withholding of

removal and protection under the Convention Against Torture ("CAT") are not properly before us

because he has not administratively exhausted those claims. Consequently, we **DENY** his petition

for review.

    *A. Factual and Procedural Background*

    Camara is a native of Mauritania, and has a limited understanding of English. He is a

member of the Soninke ethnic group. Beginning in the late 1980s, a large number of black African

Mauritanians, including Soninkes, were expelled from Mauritania. Camara claimed that in 1991

some "[w]hite military Arabs" attacked his family farm and took his family to a military camp. (P.A. 375-76; A.R. 392-93.) He stated that, while there, he and his family were put to work making bricks, that he was beaten at least once with a military belt, and that other members of his family were beaten multiple times. The family remained in the camp for three to four weeks and, thereafter, they were forced to enter Senegal. Camara's family stayed in a refugee camp in Senegal for approximately one week before Camara's brother arranged for a friend to take them to Dakar, Senegal, where they remained. Around February 19, 2000 Camara left Senegal with the help of his brother's friend, who arranged for a fraudulent passport that allowed Camara to enter the United States.

On November 2, 2000 the Department of Homeland Security issued a Notice to Appear to Camara, alleging that he improperly entered the United States on or about February 19, 2000 in violation of the Immigration and Nationality Act. Camara appeared before the IJ and requested relief in the form of asylum, withholding of removal, and protection under the CAT. The IJ denied Camara's application for relief. Camara appealed, but only on the grounds that the IJ improperly denied his claim for asylum. The BIA upheld the IJ's determination. Camara then appealed to this court, arguing that his claims for withholding of removal and protection under the CAT were improperly denied.

### B. Analysis

**1.**

On appeal, Camara only argues that his applications for withholding of removal and protection under the CAT were improperly denied. However, because Camara did not exhaust his

administrative remedies regarding these claims, they are not properly before us. In an appeal from an order of removal we will consider "only those claims as to which the alien has exhausted his administrative remedies, that is, those claims 'properly presented to the BIA and considered on their merits.'" *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). Moreover, "even if an issue is raised by the alien in his notice of appeal to the BIA, we will consider it waived if it is not argued in the brief filed with the BIA." *Id.* at 420 (citing *Ramani*, 378 F.3d at 558). The court in *Hasan* found that it did not have authority to consider petitioner's claims, since the petitioner "did not challenge before the BIA the IJ's . . . order denying the withholding of deportation and protection under the Convention Against Torture." *Id.* at 420; *see also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . .").

Before the IJ, Camara applied for asylum, withholding of removal, and protection under the CAT. However, in his briefs before the BIA, Camara only challenged the IJ's denial of his application for asylum.[1] (P.A. 118-124, A.R. 133-139; P.A. 42-55, A.R. 57-70 (not raising or arguing a claim for withholding of removal or protection under the CAT and stating that "the Board should grant [Camara's] asylum claim and admit him to the United States as an asylee").) The BIA's opinion did not consider these claims on the merits. (P.A. 32-33; A.R. 47-48.)[2] Since Camara's

---

[1]In his brief before this court, Camara does not address his claim for asylum. Since Camara did not address his claim for asylum, that claim is waived. *See Al Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008); *United States v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007).

[2]The BIA made its decision after finding, "even assuming the truth of the respondent's testimony, no error in the Immigration Judge's determination that the respondent failed to establish

briefs before the BIA did not challenge that part of the IJ's decision denying his applications for withholding of removal and protection under the CAT, and since the BIA did not consider the IJ's denial of these claims on the merits, we find that these claims are not administratively exhausted and, therefore, we deny Camara's petition.

## 2.

However, we note that, even if Camara had properly presented his claims for withholding of removal and protection under the CAT before this court, we would not grant his petition. We review de novo the legal determinations made by the IJ or the BIA, but we review factual findings and credibility determinations under the deferential substantial evidence standard. *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). Under the substantial evidence standard, we consider the BIA's findings of fact to be "conclusive unless any reasonable adjudicator would be compelled to conclude

---

a well-founded fear of future persecution in Mauritania." (P.A. 33; A.R. 48.) The well-founded fear language specifically tracks and addresses the asylum standard, but not the standards for withholding of removal or protection under the CAT. *See Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008) (noting that an applicant for asylum must show a "well-founded fear of future persecution," that an applicant for withholding of removal must show a "clear probability" of persecution, and that an applicant for protection under the CAT must show that he would "more likely than not" be subjected to torture after being deported); *see also* 8 C.F.R §§ 1208.13, 1208.16. Therefore, since Camara only raised his asylum claim in his brief, and since the BIA specifically addressed this claim, we will not presume that the BIA addressed other, unraised claims. Furthermore, Camara points to two cases from other circuits as authority that this court should consider the claims that he did not exhaust, neither of which is persuasive. In *Haxhiu v. Mukasey*, 519 F.3d 685, 691-92 (7th Cir. 2008), the court did not consider claims that were not properly raised before the BIA and therefore exhausted. And in *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104 (2d Cir. 2007), unlike this case, the government did not raise Zhong's failure to exhaust his claims before the BIA, and so the court excused Zhong's failure to exhaust all issues before the BIA.

to the contrary." *Hana v. Gonzales*, 400 F.3d 472, 475 (6th Cir. 2005) (quoting *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) and 8 U.S.C. § 1252(b)(4)(B)).

An alien cannot be removed to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant must provide evidence showing a "clear probability" that he or she would be subject to persecution. *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (citation omitted); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). This requires that it be, "more likely than not that the alien would be subject to persecution" upon his or her removal. *INS v. Stevic*, 467 U.S. 407, 424 (1984). If the applicant proves past persecution, the IJ must presume future persecution; however, the government may rebut this presumption by showing a fundamental change in the circumstances that eliminates the threat. 8 C.F.R § 1208.16(b).

Even assuming Camara proved past persecution, the government can show changed circumstances that undermine any presumption of future prosecution. The IJ properly relied on the 2003 Country Reports, which showed changed circumstances. Country reports "may be problematic sources on which to rely" but they are "generally the best source of information on conditions in foreign nations." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). Here, the 2003 Country Reports showed that, since Camara left Mauritania in 1991, tens of thousands of black African Mauritanians, who were expelled from Mauritania around the time Camara left, have returned and that "[m]any returnees received their original homes, some property, and all or a portion of their

land." (P.A. 149-50; A.R. 164-65.)[3] Furthermore, the 2003 Country Reports stated that there was

a Soninke incumbent for two ministerial posts, and that Soninkes occupied one cabinet position,

three senate seats, and two memberships in the national assembly. Other ethnic minorities also

occupied similar positions. Even though the reports state that the southern ethnic groups remain

underrepresented, their involvement in the government is significant. Moreover, Camara did not

point to any persuasive evidence that undermined the evidence of changed circumstances shown in

the 2003 Country Reports. In particular, reports of improper land redistribution and confiscation,

continued slavery and involuntary servitude (some of which was voluntary) despite government

efforts to eradicate these practices, the fact that some returning refugees may not have received

identity cards,[4] and that some of the officials in power during the 1989-1991 crisis remain in power,

do not undermine the evidence that shows a fundamental change in country conditions. Furthermore,

Camara's own general testimony about his fears of death, property confiscation, and slavery if he

returned to Mauritania was unpersuasive. (Resp't Supp. App. 299; P.A. 380, 386-387, 390; A.R.

398, 404-05, 408 (Camara's testimony was based on what he had, "heard from educated people [in

the United States] who read the newspaper" and he admitted that he did not know that anybody

expelled from Mauritanian had returned or that people of his ethnic group were members of and held

high positions in the government).) Testimony from Camara's witness, Mr. Camai, was based on

---

[3]Similarly, the 2000 Country Reports for Mauritania also noted that tens of thousands of refugees from the 1989-91 crisis had returned and that "[m]any of the returnees received their original homes, some property, and all or a portion of their land." (P.A. 456-57; J.A. 474-75.) The 2000 Country Reports also noted minority representation in the Mauritanian government. (P.A. 458; J.A. 476.)

[4]Camara, however, has already obtained an identity card. (P.A. 342-344; A.R. 359-361.)

phone calls from former classmates and neither specific to Camara's region nor corroborated, and it too was unpersuasive. The BIA's determination of changed country conditions was supported by substantial evidence. Consequently, even if we reached Camara's claim for withholding of removal, we would deny his petition.

To qualify for protection under the CAT, "the applicant bears the burden of establishing 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(2)). "Torture" means:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). "Torture" is limited to "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* at § 1208.18(a)(2). Furthermore, an act of torture "must be specifically intended to inflict severe physical or mental pain or suffering," 8 C.F.R. § 1208.18(a)(5), and "must be directed against a person in the offender's custody or physical control." *Id.* at § 1208.18(a)(6). This determination is made by considering, among other things, evidence of: (1) "past torture inflicted upon the applicant"; (2) the applicant's ability to "relocate to a part of the country of removal where he or she is not likely to be tortured"; (3) "gross, flagrant or mass violations of human

rights within the country of removal"; and (4) "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3)(i)-(iv).

Camara has not shown that it is more likely than not that he would be tortured if he returned to Mauritania. In particular, his own vague testimony based on his conversations with educated individuals in the United States and testimony from his witness, Mr. Camai, did not show that it was more likely than not that Camara would be tortured on his return to Mauritania. His family's suffering in 1991 – while inexcusable – took place nearly twenty years ago in a country that appears to have changed significantly in the interim. Indeed, the 2003 Country Reports show that the conditions that led to the removal of numerous black African Mauritanians in the late 1980s and early 1990s have changed, and the Reports do not suggest that it is more likely than not that Camara would be tortured on his return to Mauritania. Camara has not pointed to, and we do not find, any other evidence in the record that shows that it is more likely than not that he would be tortured upon his return to Mauritania. Consequently, even if we reached Camara's claim for protection under the CAT, we would deny his petition.

**ROGERS, J., concurring**.  I concur in the result and in all of the opinion except for Part B.1.