NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1037n.06

No. 12-4133

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LYUDMYLA IRHIBAYEVA,
VALERIY IRHIBAYEV,

  Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Dec 18, 2013
DEBORAH S. HUNT, Clerk

On Petition for Review from the
United States Board of Immigration
Appeals

Before:  BOGGS and SUTTON, Circuit Judges; and CLELAND, District Judge.*

  BOGGS, Circuit Judge. Petitioner, Lyudmyla Irhibayeva, a Ukrainian national, seeks review

of a decision by the Board of Immigration Appeals (BIA), dismissing her appeal from an adverse

decision by an immigration judge (IJ). The IJ's decision denied Ms. Irhibayeva's applications for

asylum, withholding of removal, and protection under the Convention Against Torture (CAT) and

ordered her removal from the United States, along with her husband, Valeriy Irhibayev, a derivative

beneficiary of his wife's asylum application. 8 U.S.C. § 1158(b)(3)(A).

---

  *The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

Because Ms. Irhibayeva failed to file her asylum application within the one-year deadline, because the IJ's denial of her application for withholding of removal was based on substantial evidence, and because she did not exhaust her administrative remedies for protection under CAT, we affirm the BIA's dismissal of the petitioners' appeal.

I

Petitioners Lyudmyla Irhibayeva and Valeriy Irhibayev are a married couple, both Ukrainian nationals, who entered the United States under temporary business visitor (B-1) visas in April of 1999 and February of 2000 respectively. They stayed in the United States for three years beyond their permission to remain before Ms. Irhibayeva filed an application for asylum on September 25, 2003.

After neither petitioner appeared for the asylum interview, a Notice to Appear (NTA) was issued in August 2004, alleging deportability based on the petitioners' lack of United States citizenship, admission to the United States under nonimmigrant visas, and overstaying their visa without authorization, in violation of the Immigration and Nationality Act (INA) § 237(a)(1)(B).

The IJ held an initial removal hearing in October 2004 and a master calendar hearing in September 2005, both in Detroit, Michigan. At the master calendar hearing, Ms. Irhibayeva submitted an updated application for asylum which, though much the same as the 2003 application, included both a request for protection under CAT and added the ground of political opinion to her request for asylum. Accompanying the updated application were 15 exhibits, several of which were new to the updated application.

2

Merits hearings were held in October 2007, October 2008, September 2009, and October 2009, at each of which Ms. Irhibayeva presented evidence of the persecution she allegedly suffered in Ukraine because her religion was Greek Catholic in a country whose majority was Ukrainian Orthodox.

First, she claimed she was fired from her job as a cook in December 1997 because she was Greek Catholic. She also alleged that in November 1998 she was attacked on the street while speaking to her neighbor, another Greek Catholic, about the construction of their church. The alleged assailants approached them, voiced their displeasure with Ms. Irhibayeva's adherence to Greek Catholicism and then shook her, threw her to the ground, and kicked her. She further alleged that, when she reported the incident to the police, they beat her and then detained her for two days as a result of their religious prejudice.

Ms. Irhibayeva next claimed that in April 1999, she and her daughter were pelted with rocks by anti-Catholic demonstrators. Ms. Irhibayeva contends that the rocks injured her daughter so badly that she was placed in an intensive-care unit for three days followed by an additional three days in a regular ward. Ms. Irhibayeva further alleged that anti-Catholics set fire to her church in September 1999, followed by another incident in October, when she and a group of Catholics going to church services were attacked by a band of Orthodox clergy and their parishioners. Police intervention dispersed the crowd, but also prevented Irhibayeva and her fellow congregants from attending Catholic church services. Ms. Irhibayeva claims that she was later detained and questioned by police officials about the incident, during which detention the police pressured her to become Orthodox, beat her, and then forced her to sign a pledge not to participate in further

3

illegal rallies. Finally, Ms. Irhibayeva claimed that, as a result of her detention, she was fired from her then-current job at a factory.

As for why she took so long to file her asylum application, Ms. Irhibayeva testified that she was defrauded by a phony document preparer that she paid five hundred dollars in 2000 but who never properly submitted her documents. She eventually filed her own application for asylum in 2003 claiming that, even though she knew of the preparer's fraud, it took several years to file because she was anxious about her children and because the people she approached for assistance informed her that she had missed her deadline.

Ms. Irhibayeva also testified regarding her efforts to bring her two daughters to the United States. First, she admitted that in 2002 she paid $10,000 to someone to provide a fraudulent green card to her older daughter, Katerina. Ms. Irhibayeva openly admitted that she paid for the documents, explaining that, because her family was persecuted, she wanted to get her children to the United States "by any means." Ms. Irhibayeva also admitted that she sent Katerina back to Ukraine in 2005 in order to bring back her younger daughter, Iulia, one year after an earlier, failed attempt to bring Iulia into the country on a false visa in 2004. Finally, the IJ questioned Ms. Irhibayeva as to why she did not include the fact that one of her daughters was in the United States in her original asylum application of 2003 and why she did not mention that both of her daughters were in the United States when she filed her updated application in 2005. After eliciting an admission that she lied on her first application, and despite a protracted back-and-forth, the IJ was unable to get a straight answer regarding Ms. Irhibayeva's later falsehoods and omissions.

Ms. Irhibayeva was also asked to explain her failure to bring Iulia to the removal hearings despite the government's request to join her daughter as a party in the proceedings. Ms. Irhibayeva

4

responded that the letter she received only required that she and her husband be present. When asked if she was willing to have the police meet her daughter at home and bring her to the proceedings, Ms. Irhibayeva objected that having the police meet her daughter would be too frightening.

Finally, at various times during the merits hearing of October 2007, the IJ asked Ms. Irhibayeva if she could provide additional evidence corroborating the authenticity of both a letter she provided purporting to certify her as a member of the Greek Catholic Church and of documents purporting to be medical records that the State Department declared invalid. Ms. Irhibayeva testified that she could provide no other evidence to demonstrate the documents' authenticity. When further questioned about her lack of documentation proving her daughters' baptism as Greek Catholics, Ms. Irhibayeva stated that, at the time of their baptisms, the church did not provide baptismal records.

Evidence was also taken from Mr. Irhibayev, covering much the same ground as that provided by Ms. Irhibayeva.

The IJ rendered his decision in July 2010, finding the petitioners removable and denying their application for asylum as well as denying Ms. Irhibayeva's application for withholding of removal and protection under CAT. As an initial matter, the IJ found both petitioners removable by clear and convincing evidence because both petitioners conceded every single one of the factual allegations set forth in the notice to appear: lack of U.S. citizenship, entry under nonimmigrant visas, and presence without permission beyond the expiration of the visa.

Because the petitioners were found removable, the only relief available was their application for asylum and, in the case of Ms. Irhibayeva alone, her applications for withholding of removal and protection under CAT. The IJ found that the asylum application was not timely filed because it was

5

not filed within one year of Ms. Irhibayeva's arrival and because she did not demonstrate that she was entitled to an exception to the deadline. Following a review of the evidence, the IJ found that the petitioners lacked credibility, both for having lied to the court and for failing to provide convincing evidence of a well-founded fear of future persecution. Because they did not carry their burden, the IJ denied Ms. Irhibayeva's application for withholding of removal and protection under CAT.

Ms. Irhibayeva filed a timely appeal with the BIA. The BIA, reviewing the findings of fact for clear error and all other issues de novo, agreed with the IJ and dismissed her appeal. The BIA found that Ms. Irhibayeva's asylum application was time barred first, because it was not filed within the one-year deadline and second, because she failed to demonstrate both that she qualified for an exception and that she had filed the application within a reasonable time under the circumstances. Because the only relief for which Mr. Irhibayev was eligible was that resulting from his status as derivative beneficiary of his wife's asylum application, the BIA's affirmance of the denial of Ms. Irhibayeva's claim disposed of Mr. Irhibayev's claim. The BIA further affirmed the IJ's finding of the petitioners' lack of credibility, finding no clear error in the IJ's assessment. As a result, the BIA found that Ms. Irhibayeva did not carry her burden of proof for her application for withholding of removal. Finally, the BIA decided that, since Ms. Irhibayeva did not contest the IJ's decision denying relief under CAT, the issue was forfeited on appeal.

In addition to appealing the IJ's decision denying her applications, Ms. Irhibayeva raised two new issues before the BIA. First, she claimed that it was both a violation of the Paperwork Reduction Act and prejudicial to her case for the BIA to schedule the appeal briefings before releasing the IJ's formally-approved decision, arguments left unadvanced on petition. Second, she

moved for oral argument to determine whether or not the BIA violated the Paperwork Reduction Act. The BIA rejected her argument and denied her motion because, even if there were a procedural error (which the BIA stated she failed to demonstrate), Ms. Irhibayeva failed to show substantial prejudice. Accordingly, the BIA denied her motion for oral argument.

Ms. Irhibayeva filed a timely petition for review, initiating this case.

II

Where the BIA adds its own comments to the decision of an immigration judge (IJ), rather than merely adopting the IJ's reasoning as it stands, we review the decision of the IJ alongside the comments made by the Board. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

The IJ's factual determinations, including credibility assessments, are reviewed under a substantial-evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004). This highly deferential standard permits reversal only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In other words, we reverse only when the record "not only supports a contrary conclusion, but indeed *compels* it." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). In contrast, the Board's legal conclusions are reviewed de novo, deferring to "the BIA's reasonable interpretations of the INA." *See Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005).

In order to support removal from the United States, the government bears the burden of establishing, by clear and convincing evidence, that the subject is deportable, 8 U.S.C.

7

§ 1229a(c)(3)(A).  In this case, removability was established by clear and convincing evidence through the petitioners' admissions of all of the factual allegations in their NTAs.

Because the petitioners were found removable, the only relief available to them lies in their applications for asylum, withholding of removal, and protection under CAT.  It must be reiterated that Mr. Irhibayev filed no application for asylum, withholding of removal, or protection under CAT in his own right.  His status as petitioner depends wholly upon his status as a derivative beneficiary of his wife's asylum application.  8 U.S.C. § 1158(b)(3)(A).  No derivative status can be conferred by either applications for withholding of removal or applications for protection under CAT.  *See In Re A-K-*, 24 I&N Dec. 275, 279 (BIA 2007) (stating that while there are provisions conferring derivative asylum, "the Act does not permit derivative withholding of removal under any circumstances").

III

A

The IJ's decision denying Ms. Irhibayeva's application for asylum is unreviewable.  Applications for asylum must be made within one year of arrival in the United States.  8 U.S.C. § 1158(a)(2)(B).  Exceptions can be granted if the applicant demonstrates "to the satisfaction of the Attorney General" either "changed circumstances" or "extraordinary circumstances." 8 U.S.C. § 1158(a)(2)(D).  If an applicant seeks to rely on either of these exceptions, he or she is still required to file the application within a reasonable time under the circumstances.

8

8 C.F.R. § 1208.4(a)(4)(c)(ii), 1208.4(a)(5). Under the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(2)(D), we "will review asylum applications denied for untimeliness only when the appeal seeks review of constitutional claims or matters of statutory construction, not when the question is discretionary or factual." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007) (internal quotation marks omitted). The issues before us are wholly discretionary or factual; no constitutional or statutory question is presented here.

The petitioner admitted that she failed to meet the one-year deadline. Accordingly, the only basis for an application for asylum is one of the exceptions. The IJ decided, and the BIA confirmed, that Ms. Irhibayeva did not establish a valid exception for failure to file her asylum application within a year. The IJ found that, having arrived in 2000, and having learned that she would have to find another preparer in March 2001, Ms. Irhibayeva had no good reason why she waited to file until October 2003. The BIA reiterated this finding, stating that she did not properly claim ineffective assistance of counsel and that, "even if [she] had established extraordinary circumstances . . . she did not establish that her application was submitted in a reasonable time thereafter."

The IJ's denial of Ms. Irhibayeva's application for asylum was based on the very type of factual determinations deemed unreviewable by *Mukasey*, 514 F.3d at 502. Ms. Irhibayeva, in her reply brief, makes a heroic attempt to resurrect her appeal, arguing that her claim is reviewable after all, because it raises a constitutional question for this court's consideration. The petitioner would have us believe that a constitutional question is at stake because the asylum application's denial resulted from an adverse credibility finding, itself the result of a faulty translation. Pet'r's Br. at 3. In fact, the application was denied, as spelled out clearly by the IJ, because Ms. Irhibayeva offered

9

no credible evidence at all as to why she waited over three years to file her application. The IJ's finding was not based on credibility. Ms. Irhibayeva did not fail to carry her burden because she was not found credible; she failed to carry her burden because she provided insufficient evidence to support finding an exception to the one-year deadline.

Accordingly, because the IJ's determination that Ms. Irhibayeva did not qualify for an exception to the one-year filing deadline was based on discretion and fact-finding and is not the subject of a genuine statutory or constitutional issue, the decision is unreviewable on appeal.

B

The BIA's affirmation of the IJ's denial of Ms. Irhibayeva's application for withholding of removal is supported by substantial evidence because the only evidence provided by the petitioner was her own non-credible testimony and uncorroborated documents. The applicant, bearing the burden of proof in an application for withholding of removal, must show that, more likely than not, she will be subjected to persecution on a protected ground. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); *see Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) ("an alien must show that there is a clear probability . . . that he would be subject to persecution on the basis of one of these five grounds . . . .") (internal quotation marks omitted). Ms. Irhibayeva failed to meet this burden.

The IJ found (and the BIA agreed) that the petitioners were not credible. As a general matter, the petitioners "outright told fibs with respect to the location of their children in order to attempt to gain an advantage in being granted asylum. This undercuts . . . . their entire credibility."

10

More specifically, the IJ found that the incidents of persecution alleged were uncorroborated by credible evidence and "internally inconsistent."

The IJ painstakingly recited the evidence of each alleged incident, explaining why the claimed incidents of persecution were not credible. For example, the medical documents proffered by Ms. Irhibayeva in support of her claim of assault on her daughter were sent to the State Department for verification which determined that they were not what they purported to be. In addition, the petitioners had been informed that the documents did not appear credible on their face, yet failed to offer any extrinsic evidence corroborating their authenticity. Even viewing the documents in the best possible light for the petitioners, the IJ found that they were not believable and chose not to credit them.

In another example, the IJ pointed out that the dates claimed for injuries sustained during the alleged assault in the street differed between Ms. Irhibayeva's oral testimony and the dates reflected in the purported hospital records. The IJ highlighted further inconsistencies: she and her husband contradicted each other regarding the number of men engaged in the assault, while she contradicted herself by stating first, that she did not know the men who assaulted her, then indicating in her written statement that she knew one of them. Finally, her general credibility was brought into question by failing to offer credible, easily-obtained, corroborating evidence from the neighbor, Stepan, who was witness to the incident and with whom Ms. Irhibayeva claims she still maintains contact. As the IJ said, "the Court can only conclude . . . that this incident did not happen, or . . . she has not proven that it happened."

Because the testimony and evidence presented was found by the IJ to be non-credible, because there was no credible corroborating evidence, and because of the petitioners' identified

propensity to lie, the IJ found that Ms. Irhibayeva did not demonstrate that she was more likely than not to be persecuted should she be removed and, on appeal, the BIA agreed. Under substantial-evidence review, we must affirm the BIA's dismissal because the record does not compel a contrary finding.

## C

Finally, as to Ms. Irhibayeva's application for protection under the CAT, the BIA deemed the issue waived because she "did not meaningfully address the Immigration Judge's decision." The BIA is quite correct and we are powerless to review such abandoned claims on appeal.

The statutory authority granting jurisdiction over appeals from the BIA states that courts can review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). We have held this to mean that "only claims properly presented to the BIA and considered *on their merits* can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (emphasis added). Admittedly, *Ramani* dealt with a case in which the un-exhausted issue was raised only in the notice of appeal, and not in the brief before the BIA. *Id.* at 559–60. However, the heart of *Ramani's* holding was that, "[n]either Ramani's notice of appeal to the BIA, nor his BIA appeal brief, advanced his current argument that the IJ misused certain evidence." *Id.* at 559. Ms. Irhibayeva's claim that she preserved the argument for appeal by including a single, fleeting reference to her application for protection under CAT is unavailing. Reply Br. at 8. Ms. Irhibayeva did not advance

12

an argument before the BIA; she merely mentioned, perfunctorily and in the brief's conclusion, that relief in the alternative could be provided by the court by granting protection under CAT.

Because she did not meaningfully advance an argument to support her application under CAT, and because the claim was not considered on its merits, Ms. Irhibayeva did not exhaust her administrative remedies. The BIA was correct to consider it waived, and we have no jurisdiction to review this unexhausted claim.

IV

For the reasons stated above, we AFFIRM the BIA's dismissal of Ms. Irhibayeva's and Mr. Irhibayev's appeal.