<u>**NOT RECOMMENDED FOR PUBLICATION**</u>
File Name: 20a0657n.06

Case No. 19-3075

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ISHAN AL-KOORWI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | **OPINION** |
| | ) | |

FILED
Nov 17, 2020
DEBORAH S. HUNT, Clerk

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Ishan Al-Koorwi petitions this court for review of a Board of Immigration Appeals decision denying his application for deferral of removal. Because substantial evidence supports the agency's findings, we **DENY** his petition for review.

I.

Al-Koorwi is a native and citizen of Iraq who first came to the United States in January 2011 as a refugee. In April 2013, Al-Koorwi became a lawful permanent resident of the United States. On February 17, 2016, Al-Koorwi pleaded no-contest to a charge of Attempted Unlawful Imprisonment, in violation of Michigan Compiled Law § 750.349b. The Department of Homeland Security then served Al-Koorwi with a Notice to Appear in immigration court, charging him as subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of attempting to commit a crime involving moral turpitude.

Represented by counsel, Al-Koorwi appeared at the initial master calendar hearing in his removal proceedings on December 22, 2016. Because of his conviction, the Immigration Judge ("IJ") found Al-Koorwi removable. Al-Koorwi then applied for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT"), arguing that he would be persecuted and tortured if deported to Iraq because of his association with the United States and his status as a Sunni Muslim. Following three individual hearings on his application, the IJ found that Al-Koorwi's conviction for a particularly serious crime barred him from statutory relief. So he denied Al-Koorwi's request for deferral of removal under CAT.

Al-Koorwi moved to reopen his application based on changed conditions in Iraq, alleging that he would face torture as a Sunni Muslim, criminal, and perceived supporter of the United States. The IJ granted Al-Koorwi's motion to reopen, solely to determine whether he was eligible for deferral of removal under the CAT, considering the alleged changed conditions. During the reopened proceedings, the government submitted into evidence the 2016 United States Department of State Country Report for Iraq and the 2016 International Religious Freedom Report for Iraq. The IJ also took judicial notice of the 2017 versions of these reports. Al-Koorwi submitted into evidence affidavits from Daniel W. Smith, Mark Lattimer, and Rebecca Heller. But the IJ found that neither Smith nor Heller qualified as an expert witness and admitted their declarations instead as percipient witnesses. The government contradicted the testimony of these witnesses with expert witnesses—Michael Rubin, Douglas Ollivant, and Denise Natali—and a report issued by the government of the United Kingdom. Ultimately, the IJ found the government's evidence more persuasive and, based on the totality of the evidence, held that Al-Koorwi failed to satisfy his burden of establishing that "it is more likely than not that he will be tortured by or with the

acquiescence of the Iraqi government if he is returned to Iraq." [AR 234.] Thus, the IJ denied Al-Koorwi's claim and ordered Al-Koorwi removed to Iraq.

Al-Koorwi appealed the IJ's denial of his reopened motion for protection under the CAT to the United States Board of Immigration Appeals ("BIA"). He argued that the IJ erred in ruling that Al-Koorwi had not shown a clear probability of torture if he returns to Iraq. And he argued that the IJ prejudiced him by denying Heller and Smith expert status but granting that status to the government's witnesses. Al–Koorwi also submitted new evidence related to allegedly changed conditions in Iraq.

The BIA affirmed the IJ's classification of experts both because Al-Koorwi failed to object to classification of the government's witnesses as experts and because the merits supported the classification decisions. In reviewing whether Al-Koorwi had satisfied his burden of proof to qualify for protection under the CAT, the BIA made clear that it was reviewing the IJ's factual determinations for clear error. After discussing the relevant factual findings of the IJ, the BIA held that the IJ "properly found that the respondent's fear of torture upon return to Iraqi [sic] is speculative" and that "[e]vidence of the general possibility of torture does not meet the respondent's burden of establishing that it is more likely than not that *he* will be targeted for such treatment." [AR 4.] Finally, the BIA treated Al-Koorwi's presentation of new evidence as a motion for remand and denied it because he failed to show how the new evidence materially differed from the record evidence. Finding none of Al-Koorwi's arguments persuasive, the BIA dismissed the appeal and adopted the IJ's decision.

On December 31, 2018, Al-Koorwi filed this petition for review. But we held the case in abeyance pending the Supreme Court's resolution of *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020). The question before the Court was "whether, in a case involving a noncitizen who committed a

crime specified in § 1252(a)(2)(C), the court of appeals should review the noncitizen's factual challenges to the CAT order (i) not at all or (ii) deferentially." *Id.* at 1688. The Court held "that the court of appeals should review factual challenges to the CAT order deferentially." *Id.*

Following *Nasrallah*, we ordered supplemental briefing on two issues. First, do we have jurisdiction to review Al-Koorwi's claims given the holding in *Nasrallah*? And second, if we have jurisdiction, does substantial evidence support the BIA's findings in this case? Satisfied that we have jurisdiction after *Nasrallah*, we determine that substantial evidence supported the BIA's findings. We thus deny Al-Koorwi's petition for review.

## II.

Al-Koorwi's petition before this court effectively raises five claims.[1] First, Al-Koorwi argues that the BIA applied the incorrect legal standard for CAT claims "when it required that Mr. Al-Koorwi show a higher burden of proof than a 'more likely than not' probability of torture if removed to Iraq." [Pet'r's Br. at 2.] Second, the BIA misapplied the correct legal standard for CAT claims by relying "on a case with clearly distinguishable facts." [*Id.*] Third, the BIA committed legal error by "ignoring or disregarding" State Department country reports, in violation of BIA precedent. [*Id.*] Fourth, the BIA prejudiced Al-Koorwi by treating two of his witnesses

---

[1] Al-Koorwi's brief lists six issues presented. But issues four and six raise the same question— whether denial of expert witness status to Heller and Smith was improper. Issue four asks whether Al-Koorwi was "prejudiced by the BIA's decision to accept the IJ's ruling to treat two of his expert witnesses as percipient witnesses." [Pet'r's Br. at 2–3.] Issue six asks whether "the BIA committed a legal error in failing to qualify [the same witnesses] as experts." [*Id.* at 3.] Al-Koorwi also asserts that he "is raising a due process claim because his previous counsel's ineffective assistance of counsel prevented him from meaningfully pursuing his claims for relief." [*Id.* at 1.] This sentence in the jurisdictional statement, however, is the only time ineffective assistance of counsel is mentioned, so he forfeited this claim. *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal quotation marks and citation omitted).

as percipient, rather than expert, witnesses. And last, the BIA acted arbitrarily and capriciously in reaching a different decision in Al-Koorwi's case than in "other cases with nearly identical facts." [*Id.* at 3.]

Before reaching the merits of Al-Koorwi's claims, we must determine whether we have jurisdiction to review them. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998). 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227[.]" Until recently, this provision barred us from reviewing a petitioner's factual challenges to a CAT order. *Kilic v. Barr*, 965 F.3d 469, 473 (6th Cir. 2020). But *Nasrallah* held that § 1252(a)(2)(C) "does not cover challenges to denials of Convention Against Torture relief." *Id.*; *see Nasrallah*, 140 S. Ct. at 1692 ("Congress's decision to bar judicial review of factual challenges to final orders of removal does not bar judicial review of factual challenges to CAT orders."). Thus, we have jurisdiction to hear Al-Koorwi's claims under the CAT.

Still, our standard of review here is "highly deferential." *Nasrallah*, 140 S. Ct. at 1692. We use the substantial evidence standard and treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* This means we reverse the agency's fact findings only if the evidence *compels* that result. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). And "we must uphold the Board's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004) (quoting *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998)).

When, as here, the BIA reviews an "immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). But to the extent that the BIA "adopted the immigration judge's reasoning," we also review the IJ's decision. *Id.*

A.

Al-Koorwi first asserts that the BIA applied the incorrect legal standard in evaluating his CAT claim because it required that he "show a higher burden of proof than a 'more likely than not' probability of torture if removed to Iraq."[2] [Pet'r's Br. at 2, 9–12.] But Al-Koorwi does not argue that the BIA applied anything other than the "more likely than not" standard. In fact, Al-Koorwi's brief concedes that the standard applied by the BIA—whether an applicant has shown that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal"—is indeed the appropriate standard 8 C.F.R. § 1208.16(c)(2) requires. [AR 4; Pet'r's Br. at 9.]

Instead, Al-Koorwi asserts that "[t]he BIA erred in *concluding* that Mr. Al-Koorwi failed to establish that it was more likely than not that he would be tortured upon removal to Iraq[.]" [Pet'r's Br. at 9 (emphasis added).] In other words, Al-Koorwi doesn't like the outcome reached by the BIA. And to this end, Al-Koorwi simply restates facts that he believes establish a likelihood of torture upon his return to Iraq and asserts that given these facts, the BIA should have found he satisfied his burden.

---

[2] We note that Al-Koorwi's supplemental brief wasn't responsive to our request for supplemental briefing. Indeed, the phrase "substantial evidence" appears nowhere in it. For this reason alone, Al-Koorwi's factual challenges should fail—he never argues that substantial evidence doesn't support the agency's findings. *See, e.g.*, *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998). But regardless, his claims also fail under the substantial evidence standard.

But substantial evidence supports the BIA's conclusion that it's not more likely than not that Al-Koorwi will be tortured upon removal to Iraq. "To be eligible for CAT relief, a petitioner must 'establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Faso v. Barr*, 823 F. App'x 321, 324 (6th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). Torture under the CAT means an "act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). The torture must be "for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." *Id.* And it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.*

As the BIA noted, evidence shows the Popular Mobilization Forces—an extremist militia group Al-Koorwi points to in order to show his fear of torture—and the Iraqi government target suspected members of ISIS. So these groups probably wouldn't target Al-Koorwi because they wouldn't suspect him of membership in ISIS. That's because Al-Koorwi lived in the United States for several years. To the extent that Al-Koorwi fears the PMF, we also note that record evidence shows the Iraqi government has committed to investigating and punishing members of the PMF who've committed human rights abuses.

Al-Koorwi also fears that when he returns, he'll be singled out because he appears "Westernized." But expert declarations note that Iraqis who appear "Westernized" are no longer singled out for poor treatment. As more Iraqis return to the country following an exodus after the United States initially entered the country, "Westernized" Iraqis have become more normal, and

7

growing wealth in Iraq, coupled with increased consumption of Western goods, makes symbols of Western culture less conspicuous. Besides, Al-Koorwi recently visited Iraq without any trouble, and he still speaks Arabic fluently. And anti-American or -Western attitudes are no longer widespread in Iraq. So, according to expert declarations in the record, the risk of persecution for one who is perceived as aligning with American or Western interests isn't high.

Even more, the Iraqi government is focused on countering terrorism and achieving post-ISIS stabilization—not detaining returning Iraqis. So the suggestion that the Iraqi government is interested in detaining even criminals returning to Iraq is, in the words of one expert, "farfetched." Further, evidence in the administrative record also shows that Iraqi deportees don't face an appreciable risk of torture just because they return to Iraq. As professionalism in the Iraqi government grows, the likelihood that returnees will face trouble when they arrive in the country has shrunk. If a returnee can show family connections to Iraq, detention is unlikely, and if detention did happen, it would, according to experts in the record, likely be "benign and temporary." Not only can Al-Koorwi show family connections to Iraq, but his brother works for the Iraqi government.

In any event, regardless of whether we believe some or all of this in the first instance (and we have no reason to doubt it), substantial evidence supports the BIA's conclusion that it isn't more likely than not that Al-Koorwi will experience torture upon his removal to Iraq.

Al-Koorwi also argues that the BIA incorrectly applied the "more likely than not" standard because it individually evaluated each factor he alleged in support of his CAT claim rather than aggregating all the factors. Al-Koorwi, however, failed to present this claim to the BIA, even though the IJ also considered each factor seriatim rather than in the aggregate when it made the factual finding in the first instance. A party must exhaust his administrative remedies by properly

presenting his claims to the BIA before we can review them. 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 557–58 (6th Cir. 2004). And unlike in some contexts where administrative exhaustion is a court-created doctrine, here, exhaustion is a statutory requirement that deprives the federal courts of jurisdiction. *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005); *Ramani*, 378 F.3d at 559.

Additionally, the statute's exhaustion requirement, as we've construed it, mandates precision; it is stricter "than merely requiring an alien to exhaust all *avenues* of appeal; [it] further require[s] the alien to preserve *each claim* by presenting it to the BIA." *Ramani*, 378 F.3d at 559 (emphasis added); *see Hasan*, 397 F.3d at 420. In other words, § 1252(d)(1) imposes an administrative issue-exhaustion requirement.[3] In *Ramani*, a petitioner to this court argued that the IJ improperly relied on evidence not admitted during the original proceeding, leading to an order of deportation. 378 F.3d at 558. Because the petitioner failed to raise this argument in his appeal to the BIA, we held that § 1252(d)(1)'s strict exhaustion requirement removed our jurisdiction over the claim: "Because the *arguments* currently presented by Ramani were not presented to the BIA, they are not subject to review by this court." *Id*. at 560 (emphasis added).

---

[3] This court recently confirmed that issue exhaustion is required when a general statute requiring "'administrative remedies' to be 'exhausted'" is combined with agency rules requiring specific issues to be identified in a notice of an administrative appeal. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). 8 U.S.C. § 1252(d)(1) explicitly states that "[a] court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right[.]" Federal regulations require that all notices of appeal filed with the BIA include a statement of the basis of appeal, which "must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged." 8 C.F.R. § 1003.3(b). This regulation clarifies that § 1252(d)(1) requires issue exhaustion. *Cf. Island Creek Coal Co*., 937 F.3d at 749 (holding that 20 C.F.R. § 802.211(a)'s requirement that petitions for review identify "specific issues to be considered" on appeal imposes an issue exhaustion requirement).

Al-Koorwi raises his aggregation argument for the first time in his petition to this court. In his brief before the BIA, Al-Koorwi chose to focus on the IJ's qualification of Heller and Smith as percipient witnesses, similar BIA decisions remanding the case because of improper qualification of expert witnesses, and human rights violations allegedly committed by the Iraqi government. Al-Koorwi's failure to present the aggregation argument to the BIA—or to contest the legal standard the IJ applied to his CAT claim at all—constitutes a failure to exhaust administrative remedies and forecloses our jurisdiction to review the claim. *See Ramani*, 378 F.3d at 559 ("Had Ramani presented his current arguments to the BIA, this matter could have been properly dealt with by immigration judges whose experience in these matters is useful. In addition, the record on these issues could have been more fully developed[.]").

Because substantial evidence supports the agency's findings that Al-Koorwi is not likely to be tortured upon his removal to Iraq, we deny his petition for review. And Al-Koorwi did not exhaust his aggregation claim during the administrative process, so we lack jurisdiction to hear this claim on the merits.

B.

Al-Koorwi next argues that the BIA erred in relying on a decision, *Matter of J-F-F-*, 23 I. & N. Dec. 912, 921 (A.G. 2006), with "clearly distinguishable" facts. The claim that Al-Koorwi makes here is not that the BIA failed to apply the proper standard of review required by BIA precedent. Rather, Al-Koorwi argues that "the BIA misapplied *Matter of J-F-F-* to Mr. Al-Koorwi's case because the *facts* are so clearly distinguishable." [Pet'r's Br. at 15 (emphasis added).]

This fails for a few reasons. First, it can hardly be said that the BIA "relied" on *Matter of J-F-F-*. Instead, it appears the BIA cited the case in support of a legal proposition. In particular,

the BIA cited it to state that a petitioner must establish each link in a hypothetical chain of events leading to torture as more likely than not to occur—and the IJ didn't clearly err in holding that Al-Koorwi failed to do so. Al-Koorwi objects to this, arguing that this isn't "a general rule applicable to all CAT claims." Instead, Al-Koorwi says, it applies only to cases where the petitioner presents "scant evidence for a CAT claim based on a sequence of events that must magically come together." And he contends that he presents multiple, independent reasons that show that it's more likely than not that he'll be tortured.

But Al-Koorwi's claims are in fact interdependent. Consider *Shakkuri v. Barr*, 780 F. App'x 286 (6th Cir. 2019). There, the petitioner alleged that "if removed to Iraq, he would likely be tortured by both the Iraqi government and the PMF because he is a Chaldean Christian, has resided in the United States for virtually his entire life, has prior criminal convictions in the United States, and is a plaintiff in a highly publicized class action lawsuit regarding the deportation of Iraqi nationals." *Id.* at 292. That all sounds familiar. But we held in *Shakkuri* that "at least with regard to his fear of torture by the Iraqi government, Petitioner alleged his independent probabilities of torture *in an interdependent form*." *Id.* at 293 (emphasis added). So he had to show that each event was more likely than not: "that he would be detained at the airport, would be transported to a detention facility, and then would be tortured for one of the many proffered reasons." *Id.* For the same reason, Al-Koorwi also must show that each event in his chain of events is more likely than not to occur and lead to torture. He fails to do so, and substantial evidence supports the BIA's use of *Matter of J-F-F-*.

C.

Third, Al-Koorwi alleges that the BIA erred in considering the 2017 U.S. Department of State Country Report on Iraq "cumulative" of evidence already in the record. [Pet'r's Br. at 25.]

He also faults the BIA for failing to treat the 2016 Country Report "with the weight required by [BIA and Sixth Circuit precedent]," [*Id.* at 26,] and for failing to admit the 2017 International Religious Freedom Report into evidence.

The BIA did not consider the 2017 Country Report "cumulative" of evidence already in the record. The BIA's reference to evidence being "cumulative" was directed to Al-Koorwi's attempt to present "additional evidence on appeal, including the 2018 International Religious Freedom Report for Iraq, travel advisory warnings, unpublished decisions from th[e] Board and an Immigration Judge in unrelated cases, and news articles from 2018 describing country conditions in Iraq." The IJ took judicial notice of the 2016 and 2017 Country Reports on Iraq and considered both in rendering its decision. It also took judicial notice of the 2017 International Religious Freedom Report, as noted in Al-Koorwi's own briefing. [Pet'r's Br. at 11 n.1; AR 55.] There was no need for the BIA to admit any of the reports into evidence because they were already part of the record. So Al-Koorwi's third claim is meritless.

D.

Fourth, Al-Koorwi argues that he was prejudiced by the IJ's classification of Heller and Smith as percipient, rather than expert, witnesses. Al-Koorwi cites several cases discussing the standard of admissibility of evidence in an immigration proceeding but fails to apply them to his case. Furthermore, the cases Al-Koorwi cites discuss prejudice to a party when evidence is *excluded*. *See, e.g.*, *Diop v. Holder*, 586 F.3d 587, 591–592 (8th Cir. 2009) (discussing the framework for analyzing whether *exclusion* of a witnesses constitutes a due process violation); [Pet'r's Br. at 29 ("To prevail in a due process challenge to the *exclusion of evidence*. . .") (emphasis added).] But the IJ did not exclude the testimony of Heller and Smith. Rather, he admitted the testimony but treated both as percipient, rather than expert, witnesses.

Without applying the cases he cites to the facts of his own case, it is hard to decipher the grounds on which Al-Koorwi argues the BIA erred in denying his witnesses expert status. In any event, Al-Koorwi makes no argument, or cites no case for the proposition, that the BIA applied the wrong standard in evaluating whether Heller and Smith qualified as experts. He also articulates no reason why denying his witnesses expert status constituted a due process violation. Finding no cognizable legal argument, we reject Al-Koorwi's fourth argument.

E.

Lastly, Al-Koorwi argues that it was arbitrary and capricious for the BIA to reach a different result in his case than in other cases with nearly identical facts. This final claim recycles his argument that the agency should've treated Heller and Smith as experts. Indeed, the thrust of Al-Koorwi's claim is that the BIA erred in treating Heller and Smith as percipient witnesses rather than expert witnesses when in previous cases it treated the two as experts. But the cases Al-Koorwi cites are unpublished BIA decisions, and federal regulations mandate that unpublished BIA decisions are not binding in other BIA cases. 8 C.F.R. § 1003.1(g); *see Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019) (noting that prior unpublished opinions are "not formally binding on the agency").

To be sure, "[i]n certain circumstances, the BIA's failure to explain inconsistent outcomes may raise 'an inference of arbitrary decisionmaking.'" *Nissan v. Barr*, 788 F. App'x 365, 367 (6th Cir. 2019) (per curiam) (quoting *Ishac*, 775 F. App'x at 788); *see also Davila-Bardales v. INS*, 27 F.3d 1, 5 (1st Cir. 1994) ("[E]ven if [unpublished BIA decisions] are not 'precedent' in the technical sense, the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation, raises precisely the kinds of concerns about arbitrary agency action that the consistency doctrine addresses.").

But "[a]n Immigration Judge has broad discretion in conducting his or her hearings." *Francis v. Barr*, 781 F. App'x 495, 500 (6th Cir. 2019) (quotation omitted). So "some degree of inconsistency 'is unavoidable—after all, administrators are not automatons.'" *Nissan*, 788 F. App'x at 367 (quoting *Henry v. INS*, 74 F.3d 1, 5–6 (1st Cir. 1996)). Besides, "the Immigration Judge's decision not to certify Smith or Heller as expert witnesses did not exclude the evidence entirely; rather, the statements were considered by the Immigration Judge as fact witnesses." *Francis*, 781 F. App'x at 500. And Al-Koorwi never "even articulate[s] how Heller's and Smith's declarations—if given expert weight—would affect the result." *Faso*, 823 F. App'x at 324. He just charges the BIA with error without any reasoning or application of law to fact. So this claim fails. *See id.*

Cases that seem similar now "may not have looked that way to the IJs or BIA members who decided them." *Nissan*, 788 F. App'x at 367. Indeed, "[t]he BIA will sometimes reach opposite conclusions in cases that have many factual similarities, but this does not reflect a failure of the agency to follow its own precedent. Rather, the different outcomes are an expected result of the discretionary weighing required to make individualized determinations." *Ettienne v. Holder*, 659 F.3d 513, 518 (6th Cir. 2011). It wasn't arbitrary and capricious for the BIA and IJ to treat Smith and Heller as percipient witnesses.

III.

For the foregoing reasons we **DENY** Al-Koorwi's petition for review.